Arthur Wachtel, J.
On July 28, 1964, plaintiff experienced pains and cramps. She was admitted to the emergency room of Morrisania Hospital in the morning of July 29, 1964, complaining of vaginal bleeding. The diagnosis then made by the examining physician was ‘ ‘ threatened abortion ’ ’. Medication and bed rest were prescribed. She was released and sent home.
After plaintiff returned home her pains increased. In the evening of the same day, July 29, 1964, she went to Fordham Hospital. The examining doctor noted, as his “ impression ”, 1 ‘ incomplete abortion. ’ ’
On July 30, 1964, plaintiff was transferred from Fordham Hospital to Jacobi Hospital, with the recommendation that a ‘ ‘ D & C ” operation be performed. The reason for the transfer noted in the record was ‘ ‘ no O.E. facilities. ’ ’
The record of Jacobi Hospital discloses the following notations of the examining physician:
‘1 Transferred here as incomplete abortion.
Imp., complete abortion.
Discharge.
gyu clinic 1 week.
To return if hemorrhage continues.”
Plaintiff did not return to Jacobi Hospital.
On August 1, 1964, she returned to Fordham Hospital. Her complaints were vaginal bleeding.
The diagnosis at this time at Fordham Hospital was “ 1. Incomplete abortion; 2. Secondary anemia (vaginal bleeding) ”. A “ D & C ” operation was performed on August 5, 1964. The plaintiff was discharged on August 6, 1964.
Plaintiff sues the City of New York and Albert Einstein College of Medicine Yeshiva University for alleged malpractice.
Plaintiff contends that the impression of “ complete abortion ” noted by the examining doctor at Jacobi Hospital on July 30 was erroneous. She relies on the diagnosis of ‘ ‘ threatened abortion ’ ’ by the Morrisania doctor and ‘ ‘ incomplete abortion ” by the examining doctors at Fordham Hospital on July 29 and August 1. She further contends that a “ D & C ” operation or ‘1 dilation and curettage ’ ’ was recommended by Fordham Hospital on July 29, that she was sent by Fordham to *758 Jacobi for that purpose, but the doctor at Jacobi Hospital failed to order the operation.
Plaintiff submitted her own testimony and the hospital records in support of her case. She produced no medical witness. Defendants rested at the end of plaintiff’s case without offering any proof. They move to dismiss the complaint on the ground that plaintiff failed to prove a prima facie case.
Plaintiff relies upon the rule of res ipsa loquitur.
The established rule of law applicable to these cases has long been well settled since Pike v. Honsinger (155 N. Y. 201 [1898]). The court there said at pages 209 to 210: “ The law relating to malpractice is simple and well settled, although not always easy of application. A physician and surgeon, by taking charge of a case, impliedly represents that he possesses, and the law places upon him the duty of possessing, that reasonable degree of learning and skill that is ordinarily possessed by physicians and surgeons in the locality where he practices, and which is ordinarily regarded by those conversant with the employment as necessary to qualify him to engage in the business of practicing medicine and surgery. Upon consenting to treat a patient, it becomes his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning to accomplish the purpose for which he was employed. He is under the further obligation to use his best judgment in exercising his skill and applying his knowledge. The law holds him liable for an injury to his patient resulting from want of the requisite knowledge and skill, or the omission to exercise reasonable care, or the failure to use his best judgment. The rule in relation to learning and skill does not require the surgeon to possess that extraordinary learning and skill which belong only to a few men of rare endowments, but such as is possessed by the average member of the medical profession in good standing. Still, he is bound to keep abreast of the times, and a departure from approved methods in general use, if it injures the patient, will render him liable, however good his intentions may have been. The rule of reasonable care and diligence does not require the exercise of the highest possible degree of care, and to render a physician and surgeon liable, it is not enough that there has been a less degree of care than some other medical man might have shown, or less than even he himself might have bestowed, but there must be a want of ordinary and reasonable care, leading to a bad result. This includes not only the diagnosis and treatment, but also the giving of proper instructions to his patient in relation to conduct, exercise and the use of an injured limb. The rule requiring him to use his best judgment does *759 not hold him liable for a mere error of judgment, provided he does what he thinks is best after careful examination. His implied engagement with his patient does not guarantee a good result, but he promises by implication to use the skill and learning of the average physician, to exercise reasonable care and to exert his best judgment in the effort to bring about a good result.”
Ordinarily, whether or not the doctor has complied with the standard set by Pike v. Housinger requires expert opinion. Mere lay opinion has little, if any, competency on the question of medical science and the standards required (41 Am. Jur., Physicians and Surgeons, § 128). Generally, expert testimony is necessary to prove the standard of care or skill ordinarily used in the practice of the medical profession at the locality where the treatment takes place; only members of the medical profession know such standards. Such testimony would also be necessary to prove proximate cause.
Plaintiff contends, however, that in this case medical opinion is not necessary, and relies on Benson v. Dean (232 N. Y. 52 [1921]).
In that case, the operating surgeon left a broken portion of his needle in the patient’s body. The court applied the rule of res ipsa loquitur, upon the ground that this was within the category of those cases where the inference of want of care could be determined ‘1 from the testimony of laymen or in the light of the knowledge and experience of the jurors themselves ” (p. 56). Judge Pound said at pages 57 to 58: “ The evidence of the first operation coupled with the presence of the broken needle in the abscess standing by itself might have suggested that proper care had not been taken and might have been enough to put defendant to his proof. (Goldstein v. Pullman Co., 220 N. Y. 549, 554.) Common sense suggests that the condition discovered by Dr. Saphir was incompatible with successful surgery and medical treatment * * * The rule res ipsa loquitur put upon the defendant the burden of going on with the case (Davis v. Kerr, 239 Penn. St. 351) ”.
This rule has been given wider significance as a result of the impact of Dean Prosser’s article in the California Law Review (vol. 37, p. 183).
There Dean Prosser suggested that the rule of resipsaloqu/itur might be applied where the physician-patient relationship was involved, because the defendant is in a position of ‘ ‘ some special responsibility toward the plaintiff or the public ” (p. 224). Dean Prosser said at page 223: ‘ ‘ The special responsibility under *760 taken for the plaintiff’s safety, the entrusting and the reliance, are at least no less than in the case of a passenger; and if an additional practical reason is needed, there is the refusal of the doctors to testify against one another. When there is an injury which any layman can recognize as inconsistent with due care, is there any reason why the medical defendant should not bear the burden of convincing the jury by the greater weight of proof that it is not his fault? ”
The landmark case of Ybarra v. Spangara (25 Cal. 2d 486), decided in 1944, gave support for his argument. In that case, during an operation for appendicitis, an unconscious patient under anaesthesia suffered a traumatic injury to his shoulder, apparently due to some kind of pressure or strain. He brought suit, joining as defendants the diagnostician, the surgeon, the anesthetist, the owner of the hospital and two nurses. The court applied the rule of res ipsa loquitur even in the absence of any inference which would point to any one defendant. The reason given was that under such circumstances, each defendant should be required to explain. The decision appears quite clearly to impose a burden upon such defendants because of their “ special responsibility ’ ’ toward the plaintiff. The injury obviously was the result of someone’s negligence. It would be impossible to prove plaintiff’s case without requiring the defendants to explain. The court would not go so far as to invoke the principle of strict liability irrespective of negligence, but insisted that justice required at least the application of the doctrine of res ipsa loquitur.
The California court in Cho v. Kempler (177 Cal. App. 2d 342, 349) relied upon Dean Prosser’s argument and stated: “ In an integrated society where individuals become inevitably dependent upon others for the exercise of due care, where these relationships are closely interwoven with our daily living, the requirement for explanation is not too great a burden to impose upon those who wield the instruments of injury and whose due care is vital to life itself.”
This view has had an impact upon certain trial courts in New York. It was followed in Klein v. Arnold (203 N. Y. S. 2d 797) where in the process of an esophagoscopy a rupture resulted. In that case, although defendant did not take the stand in his own behalf or offer medical testimony, portions of the testimony he had given in the examination before trial were read at the trial and did constitute his explanation.
Dean Prosser’s view was also followed in Sawyer v. Jewish Chronic Disease Hosp. (234 N. Y. S. 2d 372). Plaintiff’s attorney *761 cites this case, in support of his argument. In that case an infant undernourished and underfed, previously suffering from nasal discharges, died while being administered ether by the open-drop method prior to an operation for correction of feet deformities. The court applied the rule of res ipsa loquitur, following Klein v. Arnold, Ybarra v. Spangard and Cho v. Kempler (supra).
Some trend toward Ybarra has been indicated (although without citation of Ybarra) in a New York case where a traumatic injury was occasioned unrelated to the area of the operation, while the patient was under anaesthesia. (See Matlick v. Long Is. Jewish Hosp., 25 A D 2d 538.) The Appellate Division, Second Department, held that res ipsa loquitur was applicable against both the hospital and the anesthesiologist ^even though plaintiff was not under the exclusive control of any one of the hospital’s employees or the anesthesiologist. It was sufficient that the hospital’s employees had “ concurrent control” with the doctor (p. 539). (Cf. Quinones v. St. Vincent’s Hosp., 20 A D 2d 529, affd. 16 N Y 2d 572.)
However, there is little evidence of any further trend in the direction suggested by Dean Prosser. In George v. City of New York (22 A D 2d 70, affd. 17 N Y 2d 561) the Appellate Division, First Department held that the rule of res ipsa loquitur did not apply. In that case, in the course of a barium enema, the barium perforated the wall of the bowel, a large quantity of barium and the bowel content were discharged into the peritoneal cavity. An operation was performed immediately to evacuate this matter from the cavity and repair the bowel wall. It was unsuccessful and the patient died.
The court said (p. 71): “ Ordinarily, the happening of an accident is no proof that it was caused by the defendant’s negligence (Shkoditch v. 150 William St. Corp., 17 A D 2d 168; Kaplan v. City of New York, 10 A D 2d 319). It is only where two elements combine that a contrary determination is permissible. Those elements are where the defendant has exclusive control of the agency which caused the accident and where common experience shows that an accident of the character in question would not have happened unless there was negligence in the operation or control of that agency (Foltis, Inc. v. City of New York, 287 N. Y. 108, 117; Neuhoff v. Retlaw Realty Corp., 289 N. Y. 293). As regards the human body, its capacities and tolerances, it is a rare case where common knowledge is sufficient to show that an accident would not have happened without negligence. Clearly, this is not one of those rare cases.”
*762 In Charlton v. Montefiore Hosp. (45 Misc 2d 153) the court took cognizance of Dean Prosser’s arguments and the dicta in Klein v. Arnold. In that case, plaintiff was operated on by physician-employees of the defendant hospital for removal of a pterygium over the nasal cornea of the plaintiff’s left eye. After the operation, it was discovered that there was a ptosis or a drooping of the left eyelid. The court followed George v. City of New York, and held this was not a case to which res ipsa loquitur could be applied.
Is this one of those rare cases where common knowledge is sufficient to show that the plaintiff’s alleged pain and suffering would not have happened without negligence on the part of the examining doctor at Jacobi Hospital? Can a conclusion be drawn without medical opinion that the doctor in making his diagnosis of complete abortion failed to use reasonable care and diligence in the exercise of his skill and applying his knowledge, and failed to use his best judgment in exercising his skill and applying his knowledge ? Can such conclusion be drawn on the basis of common .sense and common experience? In other words, within the definition of Benson v. Bean (supra, p. 56), is it a case where the results of the treatment are of “ such a character as to warrant the inference of want of care from the testimony of laymen or in the light of the knowledge and experience of the jurors themselves ”?
Plaintiff’s contention is that the examining physician at Jacobi Hospital erroneously diagnosed plaintiff’s condition as “ complete abortion ” and that he should have diagnosed it as “incomplete abortion ”; that he failed to order an operation at the time of admission to Jacobi Hospital on July 30; that when she was readmitted to Pordham Hospital on August 1, she was in no condition for any operative procedure and required blood transfusions before it could be performed.
In the Jacobi Hospital record, the doctor notes the examinations he made and his findings. In effect, the court is requested to determine that this doctor’s findings were inaccurate, because a diagnosis of incomplete abortion was made by the examining physician at Pordham Hospital on July 29; on July 30, the doctor who then examined her ordered her “ to be transferred to Jacobi Hospital for a D & 0 because there were no “ O.R. ” facilities at Pordham Hospital; upon .readmission to Pordham Hospital on August 1, the diagnosis of “ incomplete abortion ” was again made, and a “ D & C ” operation was there performed on August 5.
*763 The court cannot, merely as a matter of common sense or common experience, determine upon the basis of the plaintiff’s testimony and the hospital records, without the opinion of a medical expert, that the diagnosis of the doctor at Jacobi Hospital, at the time of his examination, and upon the basis of his findings, was incorrect, and that the operation of dilation and curettage should have been performed on July 30, at the time of her admission to Jacobi Hospital.
There is no evidence even in the Fordham Hospital record that an immediate operation was necessary on July 30, at the time of her first admission to that hospital, or on August 1, at the time of her readmission. There is no sufficient proof that the secondary anemia and the need for blood transfusion noted in the second Fordham Hospital record could have been avoided if a D & 0 operation had been performed at Jacobi Hospital on July 30, and that the operation was delayed until August 5 because of the need for blood transfusion. The blood transfusion was performed on August 4, the day before the operation.
At most, there was a difference in the diagnosis of the examining physicians at Jacobi Hospital and at Fordham Hospital. How can the court determine, upon the basis of the notes in the hospital records made by these physicians, whether the diagnosis of the admitting physician at Jacobi Hospital on July 30, was incorrect, and that his failure to order an immediate D & C operation was prima facie malpractice 1 This is not a case such as a broken needle or a sponge left in the patient’s body after an operation, or a traumatic injury sutained while the patient is under anaesthesia in an unrelated area. In short, it is not a case where simply common sense or common experience is sufficient to warrant an inference that the condition complained of could not have been caused without negligence on the part of the examining physician at Jacobi Hospital.
Nor has plaintiff sustained her burden of proof of her claim of abandonment. She contends that the physician at Jacobi Hospital examined her “harshly”, and when she objected, refused to examine her further, and told her not to come back. Her testimony may have warranted the application of res ipsa loquitur on that ground were it not for the fact that the hospital record contradicts her contentions. The doctor therein specifically prescribed certain medication and noted ‘ ‘ Gvrr clinic 1 week. To return if hemorrhage continues.” It appears that the same medication (“ methergine ”) was administered to plaintiff on August 2, after her readmission to Fordham Hospital. The court cannot, merely upon the basis of the plaintiff’s testi *764 mony and the hospital records, determine that this doctor’s diagnosis and treatment, his failure to order an operation of D & C at the time of admission, and his instruction that she ‘1 return if hemorrhage continues ’ ’ constitutes a prima facie case of abandonment, in the absence of appropriate medical opinion.
Accordingly, the motions by the defendants to dismiss the complaint are granted.